Entered on Docket
September 24, 2012
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: September 21, 2012

_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re ) Bankruptcy Case
) No. 10-32380DM
BERTIN R. CHABOT, II, )
) Chapter 11
Debtor. )
_____)

MEMORANDUM DECISION ON MOTION TO VALUE

The parties have stipulated that the court may find the value of debtor's real property at 506 South Shoreline Drive, Mountain View, CA. (the "Property") without a trial or live testimony of their hired appraisers. While the court would have preferred hearing the appraisers respond to cross-examination and questions from the court, it will abide by the parties' wishes and decide the question. For the reasons stated below, the court finds that the value of the Property is $425,000. Accordingly, Debtor is entitled to value the lien of JP Morgan Chase Bank, N.A. "Bank") at zero for purposes of his Chapter 11 Plan pursuant to the court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases ("Guidelines").[1]

The Property is at best a run-down, small old cottage in an area where sales of what lay people not trained in appraisal

---

[1] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

techniques would call comparable are in the one-half to three-quarter of a million dollars.  In this context the two appraisers are themselves almost a quarter of a million dollars apart.  How this can be regarding such a generic non-unique house is the problem the court confronts.

In general the debtor's appraisal by Peter M. Cella ("Cella") is more persuasive than Bank's appraisal by Kha C. Lam ("Lam"). In fact the court has serious doubts about the reliability of Lam's analysis.  First and foremost among the differences is the evaluation of the structural problems present at the Property and the adjustments made.  The problems are described in detail by two of debtor's witnesses, Mr. Lefholz, a building contractor, and Mr. Burke, a home inspector.  Mr. Lefholz found it questionable whether the structure could be saved.

It is hard to imagine how Lam could dismiss such conditions and make only modest adjustments to the comparables examined.  For example, Lam grades the Property's Condition as C5, described in the Condition Ratings as in need of significant repairs with functional utility and overall livability somewhat impaired.  By comparison, C3 refers to well-maintained improvements and structures and C4 describes property calling for some deferred maintenance with major components adequately maintained and functionally adequate.  Given the significant differences in these narrative descriptions of a property's condition, and with specific reference to the sorry condition of the Property, for Lam to adjust Comparables 1, 3 and 5 - Condition C3 - by only $10,000

Case: 10-32380   Doc# 207   Filed: 09/21/12   Entered: 09/24/12 11:55:23   Page 2 of 4

is highly questionable.  The same is so with reference to
Comparables 2, 6 and 7 - Condition C4 - where there is only a
$5,000 downward adjustment.  This might have been explained had
Lam testified.

Given the condition of the Property the court questions Lam's
description of the exterior foundation walls as "fair" and the
notation of only the existence of a crawl space in the portion of
the appraisal describing the foundation.  In that same box there
is nothing marked about evidence of infestation, dampness or
settlement whereas Cella notes dry rot and Mr. Burke notes
cracking and separation of the foundation.

Cella adjusts the comparables by $250,000 across the board
and this seems far more in line with the real situation at the
Property.  But even Cella's conclusions raise some questions.  For
example, it is not clear why he adjusted downward $125,000 when
considering Condition of the Property as Poor and Comparable 1 as
Good-Average, but then adjusting Comparables 2, 3 and 4 - Average
- Good - by only $100,000.  This might have been readily explained
had Cella testified.

After reflecting on the totality of both appraisals,
considering especially the substantial expenditures necessary to
restore the Property to more acceptable conditions, but
recognizing that debtor has utilized the Property for his business
and for rentals in the past, the court rejects the bottom-line
tear down Cella valuation of $375,000 and finds the Property worth
at least $425,000.  Accordingly, debtor is entitled to value

Case: 10-32380    Doc# 207    Filed: 09/21/12    Entered: 09/24/12 11:55:23    Page 3 of 4

Bank's lien at zero for purposes of his Chapter 11 plan.

Counsel for debtor should serve and upload an order in a form consistent with Appendix A to the Guidelines, with specific reference to this Memorandum Decision (rather than any actual hearing), valuing the Property as indicated above.

\* \* \* END OF MEMORANDUM DECISION \* \* \*

Case: 10-32380   Doc# 207   Filed: 09/21/12   Entered: 09/24/12 11:55:23   Page 4 of 4